IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENCISO RODRIGO ACEVES,

       Plaintiff,

v.                                CIV 03-0365 JB/LAM

GARLAND JEFFERS AND R. RODRIGUEZ,

       Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

**THIS MATTER** is before the Court on Defendants' *Amended Motion to Dismiss for Failure to Exhaust Administrative Remedies and Memorandum Brief in Support Thereof* (*Doc. 99*) (hereinafter, "*Defendants' Amended Motion*"), filed on December 27, 2004, and on Defendants' *Notice of Attachment to Motion to Dismiss for Failure to Exhaust Administrative Remedies* (*Doc. 100*) (hereinafter, "*Defendants' Notice of Attachment*"), filed on December 28, 2004, which contains exhibits to *Defendants' Amended Motion*.  Plaintiff filed his *Plaintiff's Response to Defendant's [sic] Amended Motion to Dismiss For Failure to Exhaust Administrative Remedies* (*Doc. 103*) (hereinafter, "*Plaintiff's Response*") on January 21, 2005, and Defendants filed

---

[1]Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Proposed Findings and Recommended Disposition with the Clerk of the United States District Court for the District of New Mexico, 333 Lomas Boulevard, N.W., Albuquerque, New Mexico 87102.  **A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

their ***Reply to Plaintiff's Response to Amended Motion to Dismiss for Failure to Exhaust Administrative Remedies and Memorandum Brief in Support Thereof*** (*Doc. 105*) (hereinafter, "***Defendants' Reply***") on January 31, 2005.

In addition to the documents filed in connection with Defendants' motion, a *Martinez* report was filed in this case.[2]  The *Martinez* report has a long and tangled history that warrants unraveling prior to discussion of Defendants' motion.  Pursuant to the Court's orders (*Docs. 26, 30 and 34*), filed on April 12, 2004, May 13, 2004, and June 14, 2004, respectively, Defendants filed an un-redacted ***Martinez Report*** (*Doc. 35*), under seal, on June 14, 2004.[3]  This un-redacted *Martinez* report was unsealed by the Court's order (*Doc. 41*) filed on July 23, 2004, and ordered served on Plaintiff.  In response to this un-redacted *Martinez* report, Plaintiff filed his ***Plaintiff's Response to Defendant's [sic] Redacted Portions of Martinez Report and Plaintiff's Motion for Evidentiary Hearing, Pursuant to Rule 8(a)*** (*Doc. 54*) on August 13, 2004.  On September 27, 2004, pursuant to the Court's order (*Doc. 62*), Defendants filed an un-redacted ***Amendment to Defendants' Martinez Report*** (*Doc. 67*), under seal, amending the un-redacted ***Martinez Report*** (*Doc. 35*).[4]  This

---

[2]A *Martinez* report was required, in part, to obtain evidence of whether Plaintiff had exhausted administrative remedies available through the prison grievance procedure.  *See **Order to File a Martinez Report*** (*Doc. 26*) at 2, 4-5.

[3]Defendants had previously filed a redacted version of this *Martinez* report on June 10, 2004.  *See Exhibit A to **Defendants' Motion for Protective Order and to File Martinez Report Under Seal*** (*Doc. 33*).  Plaintiff filed a response to this redacted version of the *Martinez* report on July 13, 2004.  *See **Striken [sic] Motion Motion [sic] for Summary Judgment*** (*Doc. 36*).

[4]Defendants also filed a redacted version of this amendment on September 27, 2004.  *See Exhibit E to **Defendants' Motion for Protective Order and to File Amendment to Martinez Report Under Seal*** (*Doc. 68*).  Plaintiff filed a response to this redacted version of the amendment on October 28, 2004.  *See **Plaintiff's Response to Defendant's [sic] Amendment to Defendant's [sic] Martinez Report***" (*Doc. 74*).  Defendants filed a reply to the response on November 16, 2004.  *See*
(continued...)

un-redacted amendment was unsealed by the Court's memorandum opinion and order (*Doc. 83*) filed

on November 23, 2004, and ordered served on Plaintiff.  In response to this un-redacted amendment,

Plaintiff filed his ***Plaintiff's Response to Defendant's [sic] Unredacted Amendment to Martinez***

***Report*** (*Doc. 91*) on December 9, 2004.

      In deciding Defendants' motion, the Court has considered all of the foregoing documents, the

pleadings on file in this case, all other documents of record in this case, all attachments and exhibits

thereto, and relevant law.  For the reasons set forth below, the Court recommends that (1) Plaintiff's

claim that he was required to work in the prison kitchen, and was disciplined for refusing to work

there, be **DISMISSED WITH PREJUDICE**, *sua sponte*, for failure to state a claim upon which

relief can be granted; (2) ***Defendants' Amended Motion*** (*Doc. 99*) be treated as a motion for

summary judgment with respect to Plaintiff's other claims and **GRANTED** because Plaintiff failed

to exhaust available administrative remedies with respect to all of his other claims; and (3) Plaintiff's

other claims be **DISMISSED WITHOUT PREJUDICE** unless Plaintiff voluntarily dismisses all of

his other claims which are unexhausted and has the Court proceed to consider the merits of his sole,

remaining, exhausted claim.[5]

---

    [4](...continued)
***Defendants' Reply to Plaintiff's Response to Amendment to Martinez Report*** (*Doc. 82*).  Plaintiff
filed a surreply to Defendants' reply on December 6, 2004.  *See* ***Plaintiff's Response to Defendant's***
***[sic] Reply to Plaintiff's Response to Amendment [sic] Martinez Report*** (*Doc. 86*).

    [5]Due to its findings and recommendations herein, the Court does not need to make findings
and recommendations with regard to ***Defendants' Amended Motion for Summary Judgment***
(*Doc. 96*).

# I. Background

Plaintiff, who is an inmate proceeding *pro se* and *in forma pauperis*, seeks relief pursuant to 42 U.S.C. § 1983.  *See **Prisoner's Civil Rights Complaint** (Doc. 1)* at 2; ***Plaintiff's Statement Motion in Support to [sic] His Claims** (Doc. 18)* (hereinafter, "***Plaintiff's Statement Motion***") at B-3.[6]  During the time period relevant to his claims, Plaintiff was a federal prisoner incarcerated at the Cibola County Correctional Center (hereinafter, "CCCC") which is operated by Corrections Corporation of America (hereinafter, "CCA").  *See **Prisoner's Civil Rights Complaint** (Doc. 1)* at 2-3; ***Defendants' Answer to Plaintiff's Civil Rights Complaint** (Doc. 15)* at ¶¶ 4, 7; ***Defendants' Answer to Plaintiff's Statement Motion in Support to [sic] His Claims** (Doc. 27)* at ¶ 2.  It is undisputed that Plaintiff was incarcerated at CCCC from November of 2000, until April of 2001.  *See **Prisoner's Civil Rights Complaint** (Doc. 1)* at 2; ***Defendants' Notice of Attachment** (Doc. 100),* Exhibit C at ¶ 3; ***Defendants' Reply** (Doc. 105)*, Exhibit B at 1.  It is also undisputed that during Plaintiff's incarceration at CCCC, Defendant Garland Jeffers worked at CCCC as its warden and Defendant R. Rodriguez worked at CCCC as an assistant warden.  *See **Defendants' Notice of Attachment** (Doc. 100)*, Exhibit D at ¶ 1, Exhibit E at ¶ 1.

Plaintiff asserts claims in this case for violation of his legal and constitutional rights.  Although his allegations are a bit difficult to follow, his grounds for relief all appear to be interrelated and stem from his incarceration at CCCC.  Plaintiff's claims allege that he was (1) required to work in the prison kitchen and was disciplined for refusing to work there; (2) denied a position working in the

---

[6]On April 12, 2004, ***Plaintiff's Statement Motion** (Doc. 18)* was construed as a supplement to Plaintiff's ***Prisoner's Civil Rights Complaint** (Doc. 1)*.  *See **Order to File a Martinez Report** (Doc 26)*, filed on April 12, 2004, at 4.

prison library; (3) denied a transfer to a federal prison; (4) denied meetings with the prison warden and representatives of the Federal Bureau of Prisons and the Mexican government; (5) kept in segregation most of the time without justification; (6) physically injured by prison staff, resulting in injuries requiring medical treatment; (7) denied appropriate medical treatment; and (8) left hand-cuffed and chained in an empty cell without proper clothing or bedding on or about April 2 and 3, 2001. *See Prisoner's Civil Rights Complaint* (*Doc. 1*) at 2-6; *Plaintiff's Statement Motion* (*Doc. 18*) at A-1 through A-8, B-2, C-1 through C-2, E-1.  The legal grounds for Plaintiff's claims are less than clear; however, he appears to contend that his rights under the First, Fifth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution were violated and that he was forced to work at CCCC in violation of federal immigration laws.  *See Prisoner's Civil Rights Complaint* (*Doc. 1*) at 3-4; *Plaintiff's Statement Motion* (*Doc. 18*) at 1, B-4, B-5, D-1, D-2, E-1, E-2.  Plaintiff also contends that the status of CCCC as a privately operated prison somehow affected his rights. *See, e.g., Plaintiff's Statement Motion* (*Doc. 18*) at B-1, B-2.  As relief, Plaintiff seeks monetary damages in the amount of $2,000,000.00, and a hearing with appointed counsel and an interpreter.  *See Prisoner's Civil Rights Complaint* (*Doc. 1*) at 6.  In his complaint, Plaintiff alleges that he sought administrative relief regarding his claims and that he exhausted available administrative remedies with regard to his claims.  *See Prisoner's Civil Rights Complaint* (*Doc. 1*) at 4-5.

*Defendants' Amended Motion* (*Doc. 99*) is ready for ruling.  The motion seeks dismissal of Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6) for failure to exhaust available administrative remedies based on extensive materials submitted with the motion and the various versions of the *Martinez* report.  Because the motion requires consideration of factual material outside the pleadings, the Court recommends that the motion be treated as one for summary judgment.

*See* FED. R. CIV. P. *12(b)* (if matters outside the pleadings are submitted to, and not excluded by the court, on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."   *See also Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *cert. denied*, 125 S.Ct. 344 (2004) ("If the defendant files a motion to dismiss requiring consideration of additional factual material, the court should convert the motion to one for summary judgment and ensure that the prisoner is given proper notification of the conversion.").   In this regard, the Court notes that in the initial order directing submission of a *Martinez* report (*Doc. 26*), the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment.[7]  Additionally, Plaintiff, who is proceeding *pro se*, was afforded an opportunity to respond to the different versions of the *Martinez* report and to present conflicting evidence to controvert the facts set forth therein.

## II.  Plaintiff's Involuntary Servitude Claim

As a preliminary matter, the Court considers Plaintiff's claim that he was required to work in the prison kitchen at CCCC and was disciplined for refusing to work there.  Plaintiff describes this claim as one for "labor abuse," "slavery" and "involuntary servitude."  *See Prisoner's Civil Rights Complaint* (*Doc. 1*) at 4; *Plaintiff's Statement Motion* (*Doc. 18*) at 1, B-1; *Plaintiff's Response*

---

[7]*See Order to File a Martinez Report* (*Doc. 26*) at 5 ("**THE PARTIES ARE HEREBY GIVEN NOTICE that the *Martinez* Report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte*.  Thus, the parties should submit whatever materials they consider relevant to the Plaintiff's claims in support of, or in response to, the *Martinez* Report.  *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).**").

(*Doc. 103*) at 6.  In reviewing Plaintiff's *pro se* complaint, as supplemented, the Court is mindful that the complaint must be liberally construed.  *See Northington v. Jackson*, 973 F.2d 1518, 1520-1521 (10th Cir. 1992).  "Nevertheless, the court should not assume the role of advocate and should dismiss claims which are supported only by vague and conclusory allegations." *Id. at 1521* (*citation omitted*). The Court construes Plaintiff's claim for labor abuse, slavery and involuntary servitude as a claim for involuntary servitude which is prohibited by the Thirteenth Amendment to the United States Constitution.[8]

In order to state a valid claim under 42 U.S.C. § 1983, Plaintiff must allege that Defendants deprived him of a right secured by the United States Constitution or federal law.  *See 42 U.S.C. § 1983; see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  While the Thirteenth Amendment prohibits involuntary servitude, it contains an exception for prisoners who have been duly convicted of a crime.  Section 1 of the Thirteenth Amendment states:

> Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within the United States, or any place subject to their jurisdiction.

*United States Constitution*, Amendment XIII, Section 1 (*emphasis added*).  This exception permits involuntary servitude as punishment for a crime for which  a prisoner has been duly convicted.  *See Channer v. Hall*, 112 F.3d 214, 217 n.4 (5th Cir. 1997) (thirteenth amendment's exception permits involuntary servitude as punishment for a crime for which a person has been duly convicted); *Ruark v. Solano*, 928 F.2d 947, 949-950 (10th Cir. 1991) (thirteenth amendment restriction on

---

[8]In the context of interpreting federal criminal statutes, the United States Supreme Court has defined the term "involuntary servitude" as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

involuntary servitude does not apply to prisoners), *overruled on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996).  It is undisputed that Plaintiff was serving a seventy-seven month sentence at CCCC for a conviction of illegal re-entry into the United States.  *See Plaintiff's Statement Motion* (*Doc. 18*) at B-1; *Brief in Support of Defendants' Amended Motion for Summary Judgment* (*Doc. 97*) at 1.  Moreover, Plaintiff does not allege, and there is no evidence in the record to show, that Plaintiff was not duly convicted of that crime.  Thus, Plaintiff had no Thirteenth Amendment right to refuse to work at CCCC and he cannot complain that he was deprived of that right in violation of the United States Constitution.

Exhaustion of administrative remedies is not required for a prisoner's Section 1983 claim regarding prison conditions that fails to state a claim upon which relief can be granted.  *See* 42 U.S.C. § 1997e(c)(2).  Moreover, the Court has discretion to dismiss a Section 1983 claim regarding prison conditions *sua sponte* under 42 U.S.C. § 1997e(c)(1) if it determines that "the action . . . fails to state a claim upon which relief can be granted."  The Court may also dismiss a claim *sua sponte* under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Hall v. Bellmon*, 935 F.2d 1106, 1109-1110 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't. of Human Service*s, 925 F.2d 363, 365 (10th Cir. 1991)).

Plaintiff's claim that he was forced to work in the prison kitchen at CCCC, and that he was disciplined for refusing to work there, fails to state a claim for involuntary servitude because Plaintiff could be compelled to work at CCCC as punishment for a crime.  Therefore, the Court recommends

that Plaintiff's involuntary servitude claim against Defendants be dismissed *sua sponte*[9], with

prejudice, for failure to state a claim upon which relief can be granted.[10]

### III.  Plaintiff's Other Claims

### A.  Applicable Legal Standards

### 1.  Summary Judgment

Summary judgment may only be granted when the record reveals that there is no genuine issue

as to any material fact and the moving party is entitled to judgment as a matter of law.  *See*

FED.R.CIV.P. 56(c).  In seeking a grant of summary judgment, the movant must identify "those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  This

initial burden can be satisfied by presenting specific evidence on a particular issue or by pointing out

"an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party

has met this burden, the non-moving party may not rest on mere allegations or denials in his pleadings

---

[9]*See* 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted . . . .:)

[10]Plaintiff also contends that he could not be forced to work in the prison kitchen at CCCC because he was an illegal alien.  *See Prisoner's Civil Rights Complaint* (*Doc. 1*) at 4; *Plaintiff's Statement Motion* (*Doc. 18*) at D-1.  However, Plaintiff cites no relevant legal authority for this contention and this contention fails to state a claim for which relief can be granted under Section 1983.  Regardless of Plaintiff's status as an illegal alien, he was exempt from the Thirteen Amendment's prohibition of involuntary servitude because he was serving a sentence at CCCC for a crime for which he was convicted .  Furthermore, even if Plaintiff had been incarcerated at CCCC without having been convicted of a crime, at least one federal circuit court has held that requiring an illegal alien detainee who has not been convicted of a crime to perform housekeeping tasks in a detention facility, such as kitchen service, is not unlawful.  *See Channer v. Hall*, 112 F.3d 214, 219 (5th Cir. 1997).

but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  A "genuine issue" for trial is not simply "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160, 1164 (10th Cir. 2000) (party opposing motion must present sufficient evidence for a jury to return a verdict in that party's favor).  In deciding a motion for summary judgment, the court must consider the record as a whole and draw all reasonable inferences in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255; *Munoz*, 221 F.3d at 1164.

## 2. Exhaustion of Prison Administrative Remedies

Under 42 U.S.C. § 1997e, a prison inmate is required to exhaust available administrative remedies before suing over prison conditions, regardless of whether the prisoner is suing for injunctive relief or money damages.  *See Booth v. Churner, et al.*, 532 U.S. 731, 741 (2001).[11]  Even where available administrative remedies would appear to be futile at providing the kind of remedy sought, a prisoner must exhaust such remedies.  *Id.* at 741, n. 6; *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  This exhaustion requirement applies to all inmate suits about prison life and is designed to (1) allow prison officials an opportunity to resolve the inmate's complaint; (2) filter out some frivolous claims; and (3) create an administrative record to facilitate

---

[11]The relevant provision of the statute is 42 U.S.C. 1997e(a) which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

the review of cases eventually brought to court.  *See Porter v. Nussle*, 534 U.S. 516, 525-532 (2002).

The prisoner has the burden of affirmatively showing exhaustion, not the defendant.  *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1209-1210 (10th Cir. 2003), *cert. denied*, 125 S.Ct. 344 (2004).  Moreover, if the prisoner fails to demonstrate that he exhausted available administrative remedies before filing his action, dismissal of his claims is mandatory. *See Booth v. Churner, et al.*, 532 U.S. at 741; *Steele*, 355 F.3d at 1211.  The prisoner must plead exhaustion in his complaint and describe his efforts to exhaust prison administrative remedies.  *See Steele*, 355 F.3d at 1209-1210.  "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under [42 U.S.C.] § 1997e."  *Id. at* 1211 (quoting *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000)).  To ensure compliance with 42 U.S.C. § 1997e, "a prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity."  *Steele*, 355 F.3d at 1211.

In the Tenth Circuit, the exhaustion requirement in 42 U.S.C. § 1997e(a) is one of "total exhaustion," meaning that the presence of any unexhausted claims in a prisoner's complaint under 42 U.S.C. § 1983 ordinarily requires a court to dismiss the prisoner's entire lawsuit without prejudice. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-1190 (10th Cir. 2004); *see also Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000) (*per curiam*) ("When multiple prison condition claims have been joined . . . § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims.")  This exhaustion requirement applies fully to inmates, like Plaintiff, who are federal prisoners being held in privately operated facilities.  *See Ross v. County of Bernalillo*, 365 F.3d at 1184*; see also Jernigan v. Stuchell*, 304 F.3d at 1033 (affirming dismissal of prisoner's claims

against apparently private prison for failure to exhaust administrative remedies).      Finally, although

exhaustion of administrative remedies is generally required for prisoner claims under Section 1983,

there is an exception to the exhaustion requirement in 42 U.S.C. § 1997e(c)(2) for any claim that "is,

on its face, frivolous, malicious, fails to state claim upon which relief can be granted, or seeks

monetary relief from a defendant who is immune from such relief."   These claims may be dismissed

without first requiring the exhaustion of administrative remedies.  *See Ross v. County of Bernalillo*,

365 F.3d at 1190.

## B.  <u>Analysis</u>

In their motion, Defendants contend that Plaintiff failed to exhaust available prison

administrative remedies with respect to his claims.   Defendants assert that CCCC had an

administrative  grievance procedure in place during the period that Plaintiff was incarcerated there

which Plaintiff failed to utilize to exhaust his claims.  Defendants contend that because Plaintiff failed

to exhaust available administrative remedies with respect to his claims, his claims should be dismissed

with prejudice pursuant to 42 U.S.C. § 1997e(a) or, in the alternative, dismissed without prejudice

until such time as Plaintiff exhausts his administrative remedies.  *See* **Defendants'** *Amended Motion*

(*Doc. 99*) at 5.  In support of their motion, Defendants cite documents included in the various

versions of the *Martinez* report, a copy of the CCCC administrative grievance procedures in effect

while Plaintiff was incarcerated there,[12] copies of the formal and informal grievance forms filed by

---

[12]*See* **Defendants' Reply** (*Doc. 105*), Exhibit A.

Plaintiff while incarcerated at CCCC,[13] and several affidavits submitted by Defendants in support of their motion.[14]

Plaintiff, on the other hand, alleges in his complaint that he exhausted available administrative remedies with respect to his claims. *See **Prisoner's Civil Rights Complaint** (Doc. 1)* at 5.  In support of this allegation, Plaintiff describes the steps that he took to exhaust available administrative remedies as follows: "Usually BP-8 (first steps), because BP-9 were often denied or no authorities were willing to take the cases." *Id.*[15]  Plaintiff also states in his complaint, with regard to exhaustion of administrative remedies, that "BP-8 and BP-9 were not attended.  Not even the letters mailed to the administrative authorities." *Id.* at 4.  Plaintiff attached no evidence of exhaustion to his pleadings, although he did attach copies of prison grievance forms to his ***Plaintiff's Statement Motion*** (*Doc. 18*),[16] his ***Striken [sic] Motion Motion [sic] for Summary Judgment*** (*Doc. 36*),[17] his ***Plaintiff's Response to Defendant's Amendment to Defendant's Martinez Report*** (*Doc. 74*)[18] and his ***Plaintiff's Response*** (*Doc. 103*)[19] filed in this case.

---

[13]*See **Notice of Attachment** (Doc. 100)*, Exhibits A and B.

[14]*See **Notice of Attachment** (Doc. 100)*, Exhibits C, D, E, F and G; ***Defendants' Reply*** (*Doc. 105*), Exhibit B.

[15]Presumably, Plaintiff's references to "BP-8" and "BP-9" are references to forms promulgated by the Federal Bureau of Prisons.

[16]*See **Plaintiff's Statement Motion** (Doc. 18)*, Exhibits 3, 16-17.

[17]*See **Striken [sic] Motion Motion [sic] for Summary Judgment** (Doc. 36)*, Exhibit 3.

[18]*See **Plaintiff's Response to Defendant's Amendment to Defendant's Martinez Report*** (*Doc. 74*), Exhibits 1-7.

[19]*See **Plaintiff's Response** (Doc. 103)*, Exhibits A, B and F.

The foregoing materials, and the other materials of record in this case, demonstrate that there is no genuine issue of material fact with regard to the issue of whether Plaintiff exhausted available administrative remedies with respect to his other claims. The undisputed facts, discussed below, show that Plaintiff did exhaust available administrative remedies with respect to his claim that he was denied adequate medical treatment for his stomach problems on or before January 29, 2001. However, the undisputed facts also show that Plaintiff failed to exhaust available administrative remedies with respect to his claims that he was (1) denied a position working in the prison library; (2) denied a transfer to a federal prison; (3) denied meetings with the prison warden and representatives of the Federal Bureau of Prisons and the Mexican government; (4) kept in segregation most of the time without justification; (5) physically injured by prison staff, resulting in injuries requiring medical treatment; (6) denied appropriate medical treatment (except medical treatment for stomach problems on or before January 29, 2001); and (7) left hand-cuffed and chained in an empty cell without proper clothing or bedding on or about April 2 and 3, 2001.

## 1. **CCCC Grievance Procedures**

The CCCC policy regarding inmate grievance procedures defines grievable matters and establishes a formal process for inmates to follow to "file complaints about facility conditions, treatment, policies, and procedures." *Defendants' Reply* (*Doc. 105*), Exhibit A at 1.[20] If a matter is grievable,[21] there are multiple steps in the formal grievance process. These steps are as follows:

---

[20]This policy encourages inmates to resolve complaints informally through communication with staff or the submission of "Inmate Request Forms," but grants all inmates access to CCCC's formal grievance procedures. *See* **Defendants' Reply** (*Doc. 105*), Exhibit A at 1-2.

[21]Under the CCCC grievance policy, the following matters are grievable: (1) the application of policies, rules and procedures; (2) individual staff and inmate actions, including any denial of access (continued...)

(1) after an unsuccessful attempt at informal resolution of a complaint, an inmate may file a grievance on an "Inmate Grievance Form (Form 14-5A)" by submitting the form to a member of his unit management team; (2) if the unit manager is unable to resolve the issue, he forwards the grievance form to the Facility Grievance Officer who investigates the grievance, issues a written decision on a portion of the Inmate Grievance Form, and forwards a copy of the form to the inmate; (3) if the inmate is not satisfied with the decision of the Facility Grievance Officer, the inmate may submit an appeal to the Warden/Administrator or his designee by completing a portion of the Inmate Grievance Form and submitting the form to the Warden/Administrator or his designee who issues a written decision on a portion of the form and returns the form to the Facility Grievance Officer who forwards a copy to the inmate; and (4) if the inmate is not satisfied with the decision of the Warden/Administrator or his designee, the inmate may submit an appeal to the CCA Senior Divisional Director by completing a portion of the Inmate Grievance Form and submitting the form to the Senior Divisional Director who issues a written decision on a portion of the form and returns the form to the Facility Grievance Officer who forwards a copy to the inmate.[22]  The grievance policy sets time limits for filing grievances and appeals of grievances.[23]

---

[21](...continued)
to the grievance procedure; (3) reprisals against inmates for filing an appeal under the grievance procedure; (4) any loss of property legitimately  possessed by an inmate; and (5) any other matter related to the conditions of care and supervision within the authority of Corrections Corporation of America, except as noted in the grievance policy.  *See **Defendants' Reply** (Doc. 105)*, Exhibit A at 2.  The following matters are non-grievable under the CCCC grievance policy: (1) state and federal court decisions; (2) state and federal laws and regulations; (3) final decisions on grievances; and (4) contracting agency Bureau of Prisons policies, procedures, decisions or matters.  *Id.*

[22]*See **Defendants' Reply** (Doc. 105)*, Exhibit A at 2-6.

[23]*Id.* at 2-5.

CCCC has special requirements for grievances that involve Federal Bureau of Prisons (hereinafter, "BOP") issues.  If a grievance concerns a BOP issue, such as sentence computation, designation and transfer issues, discipline matters and prior custody, the inmate must complete a BOP Form BP-9 (Request for Administrative Remedy) and process it through the same procedure as other CCCC grievances.[24]  If the matter is not resolved through the CCCC grievance procedure, then CCCC will forward the grievance to a BOP contracting officer, and BOP Form BP-10 (Regional Administrative Remedy Appeal) will be used for an appeal to the BOP Western Regional Director and BOP Form BP-11 (Central Office Administrative Remedy Appeal) will be used for an appeal to the BOP central office following time frames contained in BOP Program Statement 1330.13 (Administrative Remedy Program).[25]

## 2. Plaintiff's Grievances

Plaintiff was a prolific grievant at CCCC.  The record shows that he filed a total of sixty-nine grievances between November 9, 2000, and April 8, 2001, while incarcerated there.[26]  Some of these grievances were informal, submitted on Inmate Request Forms; others grievances were formal, submitted on Inmate Grievance Forms.  Most of these grievances were denied by CCCC officials on the merits, or for failing to follow proper procedures under the CCCC grievance policy.  Of the sixty-nine grievances filed by Plaintiff at CCCC, only one concerning matters related to his other claims in this case was exhausted under the administrative procedures provided for in CCCC's grievance

---

[24]*Id. at 4.*

[25]*Id.* at 4-6.

[26]*See Doc. 18*, Exhibits 3 and 16; *Doc. 36*, Exhibit 3; *Doc. 74*, Exhibits 1-7; *Doc. 100*, Exhibit A at 1-35, 37-97, Exhibit B at 1-2; *Doc. 103*, Exhibit A at 1-10, Exhibit B at 1-8, 10-12, 15, Exhibit F at 1-2.

policy.  That was grievance numbered 01-504-040 (hereinafter, "Grievance 01-504-040"), submitted

by Plaintiff on January 29, 2001, and file-stamped "received" on February 1, 2001.[27]

In Grievance 01-504-040, which was a formal grievance filed by Plaintiff on an Inmate

Grievance Form, Plaintiff complained that he was receiving inadequate medical treatment for stomach

pain and that he was not provided with a proper diet for this medical condition.  *See **Defendants'***

***Notice of Attachment*** (*Doc. 100*), Ex. A, first 25 pages.[28]   On February 12, 2001, the CCCC

grievance coordinator issued his response to this grievance and dismissed it, finding there was no

evidence that Plaintiff was receiving inadequate medical care for his stomach problems.  *See*

***Defendants' Notice of Attachment*** (*Doc. 100*), Exhibit A at 5th page.  Plaintiff appealed the

grievance officer's decision, reiterating complaints about the medical treatment of his stomach

problems, and on February 21, 2001, Warden Garland Jeffers denied his appeal.  *See **Defendants'***

***Notice of Attachment*** (*Doc. 100*), Exhibit A at 7th page.  On February 24, 2001, Plaintiff appealed

the Warden's decision to the CCA Division Director and on March 19, 2001, the Division Director

concluded that Plaintiff had received adequate medical care and that there was no violation of policy

or procedure in the course of his treatment at CCCC.  *See **Defendants' Notice of Attachment***

(*Doc. 100*), Exhibit A at 1st-2[nd], 8th-9[th] pages.  Because Plaintiff filed a grievance and exhausted all

steps in the grievance procedure with regard to his claim of inadequate medical care for his stomach

---

[27]Copies of Grievance Form 01-504-040, and the documents filed with it, are at ***Defendants'***
***Notice of Attachment*** (*Doc. 100*),  Exhibit A, first 25 pages (Plaintiff did not number these pages,
so all references herein are to the location of the page within the exhibit).

[28]Plaintiff filed at least two informal grievances, one on January 1, 2001, and another on
January 28, 2001, regarding his claim of inadequate medical treatment for stomach pain and related
dietary requests.  *See **Defendants' Notice of Attachment*** (*Doc. 100*), Exhibit A at 23rd-24[th], 75th-
76th pages.

problems,[29] the Court concludes that Plaintiff exhausted CCCC's administrative remedies with respect to this claim, at least for the time period up to January 29, 2001, which is the date Grievance 01-504-040 was submitted to CCCC by Plaintiff.

There is no evidence in the record that Plaintiff exhausted CCCC's administrative remedies with respect to the rest of his other claims in this case.  While the record contains some grievances filed by Plaintiff related to his claims that he was denied a meeting with a representative of the Mexican government[30] and wrongfully kept in segregation,[31] there is no evidence in the record that these grievances were exhausted or that Plaintiff filed any grievances at CCCC related to the rest of his other claims.  Based on this lack of evidence, the Court concludes that Plaintiff failed to exhaust CCCC's available administrative remedies with respect to the rest of his other claims.

### 3.  Plaintiff's Arguments Regarding Exhaustion

In response to Defendants' motion, Plaintiff makes several arguments regarding exhaustion of administrative remedies, all of which are without merit.  First, Plaintiff argues that the grievance procedures at CCCC were not available in Spanish, in an apparent effort to excuse his failure to file grievances or pursue them on appeal.  *See Plaintiff's Response* (*Doc. 103*) at 3.  However, even if this was the case, Plaintiff does not allege that this prevented him from filing grievances at CCCC.  Moreover, it is obvious from the number of grievances that Plaintiff filed at CCCC, both in English and in Spanish, that he understood the grievance process there and was able to file grievances and

---

[29]Nothing in the record indicates that Grievance No. 01-504-040 concerned a BOP issue requiring additional appeals to the BOP Western Regional Director and the BOP central office.

[30]*See Defendants' Notice of Attachment* (*Doc. 100*), Exhibit A at 37th page.

[31]*See Plaintiff's Response* (*Doc. 103*), Exhibit A at 2-3; *Defendants' Notice of Attachment* (*Doc. 100*), Exhibit A at 53rd-54th, 65th, 67'h, 69th-70th, 74th, 79th-84th pages.

pursue them on appeal.  Thus, the Court concludes that the lack of a Spanish grievance procedure did not justify Plaintiff's failure to exhaust administrative remedies in this case.  Second, Plaintiff asserts that CCCC staff were not a good source of information about grievances and that the first or second times Plaintiff requested grievance forms from them they gave him the wrong ones.  *Id.* at 3-4. Plaintiff provides no evidence of this contention and, even if it were true, the record demonstrates that Plaintiff quickly gained knowledge of CCCC's grievance procedures, after his arrival there, learning to file both formal and informal grievances on the required forms.  Third, Plaintiff argues that because CCCC is a private facility that had no contractual or employment relationship with Plaintiff, he cannot be required to exhaust its administrative grievance procedures.  *Id.* at 4.  However, the Court finds no authority to support this argument and the Tenth Circuit has clearly held that the exhaustion requirements in 42 U.S.C. § 1997e(a) apply to inmates, like Plaintiff, who are incarcerated in private prisons.  *See Ross v. County of Bernalillo*, 365 F.3d at 1184.  Fourth, Plaintiff argues that he did file grievances regarding the allegations in his complaint, citing Exhibits 2 through 5 to ***Plaintiff's Response to Defendant's [sic] Amendment to Defendant's [sic] Martinez Report*** (*Doc. 74*).  *See **Plaintiff's Response*** (*Doc. 103*) at 4.  These Exhibits, which are pages from Plaintiff's formal grievance numbered 01-504-005, show that Plaintiff complained in this grievance of being disciplined for refusing to work in the prison kitchen and that he appealed the grievance at least to the level of the Warden.  It is unclear from these Exhibits whether Plaintiff appealed this grievance to the CCA Senior Divisional Director.[32]  However, even if Plaintiff did exhaust available administrative remedies

---

[32]The form shows that Plaintiff completed the section of the grievance form for an appeal to the Divisional Director but fails to show any disposition of the appeal by the Divisional Director.  *See **Plaintiff's Response to Defendant's [sic] Amendment to Defendant's [sic] Martinez Report*** (*Doc. 74*), Exhibit 5.

with respect to his claim that he was disciplined for refusing to work in the prison kitchen, this claim is not actionable under the Thirteenth Amendment as discussed above. Fifth, Plaintiff complains that he was deprived of a pencil on April 2, 2001, following an altercation with prison staff, and subsequently transferred to another prison on April 13, 2001, which prevented him from filing any grievances related to the April 2nd incident. *See **Plaintiff's Response** (Doc. 103)* at 4-5. However, this claim is not supported by the record. The record shows that Plaintiff did have access to writing materials and CCCC grievance forms during the period between the April 2nd incident and the date of his transfer as he filed at least one informal grievance at CCCC on April 8, 2001, requesting medical attention for his shoulder. *See **Plaintiff's Statement Motion** (Doc. 18)*, Exhibit 16. Sixth, Plaintiff appears to allege that he was transferred from CCCC to another prison to keep him from filing grievances there. *See **Plaintiff's Response** (Doc. 103)* at 5. However, Plaintiff has submitted no evidence of a retaliatory transfer and his allegations, without evidence, are not sufficient to withstand summary judgment. *See Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000) ("A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts.") Additionally, there is evidence in the record that Plaintiff requested a transfer to another prison while incarcerated at CCCC. *See, e.g., **Defendants' Notice of Attachment** (Doc. 100)*, Exhibit A at 37th, 39th-40th pages. Finally, Plaintiff contends that there are only three incomplete grievances in the record (formal grievances numbered 01-504-040, 01-504-046 and 01-504-047) and that Defendants have hidden and failed to disclose evidence that Plaintiff exhausted administrative remedies. *See **Plaintiff's Response** (Doc. 103)* at 5. However, the record, as discussed above, shows that Plaintiff only exhausted administrative remedies with respect to Grievance 01-504-040,

and there is no evidence in the record indicating that Defendants have withheld evidence related to Plaintiff's grievance filings.

## IV.  Conclusion

Plaintiff's claim that he was required to work in the prison kitchen at CCCC, and was disciplined for refusing to work there, fails to state a claim upon which relief can be granted. Therefore, the Court recommends that this claim be dismissed, *sua sponte*, with prejudice, pursuant to 42 U.S.C. § 1997e(c)(1) and FED. R. CIV. P. 12(b)(6).

As for Plaintiff's other claims, there are no genuine issues of material fact with respect to Plaintiff's exhaustion of administrative remedies for those claims.  Plaintiff did exhaust CCCC's administrative remedies with respect to his claim that he was denied adequate medical treatment for his stomach problems on or before January 29, 2001, but Plaintiff failed to exhaust CCCC's administrative remedies with respect to the rest of his other claims making his complaint a "mixed" complaint containing both exhausted and unexhausted claims.   Accordingly, under 42 U.S.C. § 1997e(a) and the "total exhaustion" requirement expressed in *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-1190 (10th Cir. 2004), Defendants' motion should be granted with respect to Plaintiff's other claims for failure to exhaust available administrative remedies with respect to those claims and those claims should be dismissed without prejudice.[33]  Because the Court

---

[33]Regarding the dismissal of Plaintiff's other claims, the Court notes that Defendants seek, in the first instance, to have Plaintiff's claims dismissed with prejudice instead of without prejudice and, in the alternative, dismissed without prejudice until Plaintiff exhausts available administrative remedies.  *See Defendants' Amended Motion* (*Doc. 99*), at 5.  On this issue, the Court will follow Tenth Circuit precedent holding that unexhausted prisoner claims under 42 U.S.C. § 1983 should ordinarily be dismissed without prejudice.  *See, e.g., Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003), *cert. denied*, 125 S.Ct. 344 (2004) (dismissal of prisoner's § 1983 prison conditions claims based on lack of exhaustion should ordinarily be without prejudice); (continued...)

concludes that all of Plaintiff's other claims should be dismissed without prejudice for failure to exhaust administrative remedies, the Court expresses no opinion on the merits of those claims.

Additionally, as an alternative to total dismissal of all of Plaintiff's other claims at this time, the Court recommends that Plaintiff be allowed to, **but not required to**, dismiss all of his other claims which are unexhausted claims,[34] and have the Court proceed to consider the merits of his sole, remaining, exhausted claim.[35]  *See West v. Kolar*, No. 03-6265, 2004 WL 1834634, at *2, (10th Cir. Aug. 17, 2004) (unpublished); *Lee v. Larkin*, No. 02-3428, 2005 WL 41652, at *3 (D. Kan. Jan. 7, 2005) (unpublished).

## RECOMMENDED DISPOSITION

The Court recommends that: (1) Plaintiff's claim that he was required to work in the prison kitchen, and was disciplined for refusing to work there, be **DISMISSED WITH PREJUDICE**, *sua*

---

[33](...continued)
*Jernigan v. Stuchell*, 304 F.3d 1030 (10th Cir. 2002) (affirming dismissal without prejudice of *pro se* prisoner's § 1983 claim for failure to exhaust administrative remedies even though claim may have been time-barred under prison's administrative grievance procedure).  Accordingly, the Court recommends dismissal of Plaintiff's other claims without prejudice, leaving open the possibility that in a subsequent action Plaintiff may be able to offer evidence not submitted in this case that he exhausted available administrative remedies with respect to his unexhausted claims or was somehow prevented from doing so.

[34]These are Plaintiff's claims that he was (1) denied a position working in the prison library; (2) denied a transfer to a federal prison; (3) denied meetings with the prison warden and representatives of the Federal Bureau of Prisons and the Mexican government; (4) kept in segregation most of the time without justification; (5) physically injured by prison staff, resulting in injuries requiring medical treatment; (6) denied appropriate medical treatment (except medical treatment for stomach problems on or before January 29, 2001); and (7) left hand-cuffed and chained in an empty cell without proper clothing or bedding on or about April 2 and 3, 2001.

[35]This is Plaintiff's claim that he was denied proper medical treatment for his stomach problems on or before January 29, 2001, while incarcerated at CCCC. *See* Grievance Form No. 01-504-040, submitted by Plaintiff on January 29, 2001.

*sponte*, for failure to state a claim upon which relief can be granted; (2) ***Defendants' Amended Motion*** (*Doc. 99*) be treated as a motion for summary judgment with respect to Plaintiff's other claims and **GRANTED** for failure to exhaust available administrative remedies with respect to all of his other claims; and (3) Plaintiff's other claims be **DISMISSED WITHOUT PREJUDICE unless Plaintiff voluntarily dismisses his other claims which are unexhausted claims as described herein, no later than ten (10) days after adoption of these Proposed Findings and Recommended Disposition by the Presiding Judge assigned to this case following expiration of the deadline for filing objections described in footnote 1, above.**


*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**